JS-6

| | | |
|---|---|---|
| | UNITED STATES DISTRICT COURT | Priority ____ |
| | CENTRAL DISTRICT OF CALIFORNIA | Send ____ |
| | | Enter ____ |
| | CIVIL MINUTES - GENERAL | Closed ____ |
| | | JS-5/JS-6 ____ |
| | | Scan Only ____ |

**CASE NO.:** CV 11-03617 SJO (RZx)     **DATE:** April 26, 2012

**TITLE:** Norma Rothman v. General Nutrition Corporation, et al.

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**      **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                         Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING RENEWED MOTION TO CERTIFY CLASS** [Docket No. 59]; **ORDER DISMISSING PLAINTIFF'S THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

This matter is before the Court on Plaintiff Norma Rothman's ("Plaintiff") Renewed Motion to Certify Class ("Motion"), filed March 16, 2012. Defendant General Nutrition Corporation ("GNC" or "Defendant") filed an Opposition on April 2, 2012 ("Opposition"), to which Plaintiff submitted a Reply on April 9, 2012 ("Reply"). The Court finds the matter suitable for disposition without oral argument and vacates the hearing set for April 23, 2012. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **DENIES** Plaintiff's Motion and **DISMISSES** Plaintiff's Third Amended Complaint ("TAC") without leave to amend.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 2011, Plaintiff filed a Complaint in Los Angeles Superior Court against Defendant. The Complaint alleged violations of California Civil Code section 1747.08 (the Song-Beverly Credit Card Act) and California Business and Professions Code section 17200. (*See generally* Compl., ECF No. 1.) Plaintiff alleged that she purchased items from Defendant's store, using her credit card as payment. (Compl. ¶ 22.) She alleged that Defendant "requested and/or required Plaintiff to provide her ZIP code" in connection with the credit card transaction. (Compl. ¶ 22.) Plaintiff alleged, on information and belief, that Defendant recorded her ZIP code information in its computer. (Compl. ¶ 22.) Plaintiff sought to represent a class defined as: "All persons who engaged in a credit card transaction during the last four (4) years at one of Defendants' retail stores located in the State of California, and who was requested or required to provide personal identification information at the time of the credit card transaction." (Compl. ¶ 11.) The Complaint sought statutory penalties, injunctive relief, restitution, attorneys' fees, and costs. (Compl. 11-12.)

On April 27, 2011, Defendant removed the case to federal court. (*See generally* Not. of Removal, ECF No. 1.) On May 27, 2011, Plaintiff filed the First Amended Complaint ("FAC"), dropping the Business and Professions Code claim and limiting the class to persons who had engaged in a

credit card transaction during the one year prior to the filing of the action. (*See generally* FAC, ECF No. 7; FAC ¶ 11.) The FAC also dropped the claims for injunctive relief, leaving only the section 1747.08 claim. (*See generally* FAC.)

On June 29, 2011, Plaintiff filed a Second Amended Complaint ("SAC"). The SAC added that Plaintiff purchased the items from Defendant on May 17, 2010 ("May 2010 Purchase"), but was otherwise unchanged from the FAC. (SAC ¶ 22, June 29, 2011, ECF No. 18.) The proposed class, as defined in the SAC, was "[a]ll persons who engaged in a credit card transaction during the last one (1) year at one of Defendants' retail stores located in the State of California, and who was requested or required to provide personal identification information at the time of the credit card transaction." (SAC ¶ 11.) On September 29, 2011, Plaintiff filed a Motion to Certify the Class (ECF No. 25), which the Court denied on November 17, 2011. (ECF No. 46.)

On November 29, 2011, Plaintiff filed a Motion for Reconsideration. (ECF No. 48.) The Court denied the Motion for Reconsideration, but granted Plaintiff leave to file a third amended complaint. (Order, Dec. 28, 2011, ECF No. 52.) On January 17, 2012, Plaintiff filed the TAC, which is the operative complaint. (*See generally* TAC, ECF No. 53.) The TAC provided a modified class definition:

> All persons who engaged in a credit card transaction during the Class Period at one of Defendant's retail stores located in the State of California during which their ZIP code was required or requested, and was recorded by Defendants manually or electronically. Excluded from this definition are all transactions wherein a person's ZIP code was provided in connection with enrollment in Defendant's "Gold Card" program at the time of the transaction, or wherein a person's ZIP code was provided in connection to the Defendant's shipping or delivering any goods or services.

(TAC ¶ 17.) Plaintiff also added more details in the TAC about Defendant's alleged "policy of requesting and recording ZIP codes." (TAC ¶¶ 12-15.) On March 16, 2012, Plaintiff filed the instant Motion seeking to certify the newly defined class. (*See generally* Mot., ECF No. 59.) Defendant argues that class certification is inappropriate because Plaintiff lacks standing to sue because she used a debit card to make her purchase rather than a credit card. (*See generally* Opp'n, Apr. 2, 2012, ECF No. 75.)

II.     DISCUSSION

        A.      Song-Beverly Credit Card Act

The Song-Beverly Credit Card Act (the "Act") is a consumer protection statute. *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 527 (2011). Among its provisions, the Act makes it a violation for a business to "[r]equest, or require as a condition to accepting [a] credit card as payment [] for goods or services, the cardholder to provide personal identification information,

Case 2:11-cv-03617-SJO-RZ Document 93 Filed 04/26/12 Page 3 of 8 Page ID #:1484

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-03617 SJO (RZx)</u>     DATE: <u>April 26, 2012</u>

which the [business] causes to be written, or otherwise records." Cal. Civ. Code § 1747.08(a)(2). The California Supreme Court has also concluded that "personal identification information" ("PII") includes a cardholder's ZIP code. *Pineda*, 51 Cal. 4th at 527.

The prohibition in "section 1747.08 applies only to credit cards" - not debit cards. *Saulic v. Symantec Corp.*, 596 F. Supp. 2d 1323, 1328 (C.D. Cal. 2009) ("At least two categories of transactions must be excluded from plaintiff's purported class as a matter of law: corporate cards and debit cards."). Accordingly, a plaintiff who used a debit card instead of a credit card during the transaction does not have standing to bring a claim under section 1747.08. *Id.*

The Act defines "credit card" as follows: "[A]ny card, plate, coupon book, or other single credit device existing for the purpose of being used from time to time upon presentation **to obtain money**, property, labor, or services **on credit**." Cal. Civ. Code § 1747.02(a) (emphases added). Section 1747.08 speaks only of credit card transactions, whereas other sections of the Act reference both credit and debit card transactions. *Compare* Cal. Civ. Code § 1747.08 ("[N]o [business] that accepts **credit cards** for the transaction of business . . . ." (emphasis added)), *with* Cal. Civ. Code § 1747.09 ("[N]o [business] that accepts **credit or debit cards** for the transaction of business . . . ." (emphasis added)). When the legislature includes particular language in one section of a statute but omits it in another, "it is generally presumed that [the legislature] act[ed] intentionally and purposely in the disparate inclusion or exclusion." *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (internal quotation marks omitted). The Court will not read a phrase into a statute when the legislature has left it out. *See id.* The term "credit card" does not cover debit cards under the Act. *See* Cal. Civ. Code § 1747.02(a). Thus, a plaintiff must have used a credit card during the purchase to bring suit under section 1747.08.

    B.    <u>Debit Card Processing</u>

Defendant argues that Plaintiff lacks standing to bring a section 1747.08 claim because she used a debit card - not a credit card - during her transaction. (Opp'n 7-8.) Plaintiff counters that her card is actually a "tri-use card that operates as an ATM, debit, and VISA credit card." (Reply 1, Apr. 9, 2012, ECF No. 83.) Plaintiff asserts that during the May 2010 Purchase, she swiped her card and was given the option of selecting "debit" or "credit" on the store's terminal screen, at which juncture she selected "credit" and used her card as a "credit card," providing her signature for the purchase. (Reply 1-3; *see generally* Supplemental Decl. of Norma Rothman in Supp. of Mot. ("Rothman Decl."), Apr. 9, 2012, ECF No. 83.) However, the evidence before the Court establishes that Plaintiff's bank account was debited on May 17, 2010, the **same day** Plaintiff allegedly made her purchase from Defendant's store. (TAC ¶ 28; Decl. of Susan L. Germaise in Supp. of Opp'n ("Germaise Decl.") Ex. A, Apr. 2, 2012, ECF No. 76.) Thus, this purchase was not "on credit," as required by the Act.

Plaintiff provides her own declaration to explain how her bank processes purchases made with her card. (*See* Rothman Decl. ¶¶ 3-8, 11-14.) Defendant has objected to this testimony. (Def.'s Evidentiary Objections 9-14, Apr. 12, 2012, ECF No. 90.) The Court agrees that Plaintiff has not established the foundation for her knowledge of the banking procedures and how various

Case 2:11-cv-03617-SJO-RZ Document 93 Filed 04/26/12 Page 4 of 8 Page ID #:1485

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-03617 SJO (RZx)</u>  **DATE:** <u>April 26, 2012</u>

purchases are treated or processed by her banking institution. The Court sustains Defendant's objections to the Rothman Declaration and will not consider paragraphs 3-8 or 11-14 to the extent they purport to explain how Chase finances or processes her financial transactions.[1]

Debit card processing allows a business to accept a customer's debit card that is linked to the customer's checking or savings account.[2] When using a debit card, the purchaser is often given the option between two primary types of **debit card processing**: "PIN debit" or "signature debit." *Debit Card Processing*, J.P. Morgan Chase Bank, N.A., http://www.chasepaymentech.com/debit_card_processing.html (last visited Apr. 16, 2012). To use PIN debit, the customer selects "debit" at the point of sale and enters her PIN; to select signature debit, the customer instead chooses "credit." **Either way, the purchase is not made on credit**.

Publicly-available information from both Chase and Visa[3] confirms that selecting the "credit" option on a terminal after swiping a debit card does not actually mean the customer is purchasing the item on credit. *See, e.g.*, *Debit Card 3% Cash Back*, J.P. Morgan Chase Bank, N.A., https://www.chase.com/index.jsp?pg_name=ccpmapp/shared/marketing/page/cdc_0930_ext (last visited Apr. 16, 2012) (explaining, in advertisement for a Chase debit card, how to get cash back: "To get the 3% cash back, don't say 'DEBIT'! That's right, when paying, you always have to select

---

[1] Defendant only objected to paragraphs 3-6 and 9 of the Rothman Declaration. (Def.'s Evidentiary Objections 9-14.) However, the Court has reviewed and considered the Rothman Declaration and determined that paragraphs 3-8 and 11-14 contain statements that lack foundation and for which Rothman likely does not have personal knowledge. The parties have made additional evidentiary objections as well. (*See generally* Def.'s Evidentiary Objections; Pl.'s Evidentiary Objections, Apr. 9, 2012, ECF No. 84.) To the extent the Court relies on any evidence to which either party objects, the objections are overruled.

[2] To determine what is entailed in the processing of a debit card transaction, the Court takes judicial notice of the information set forth in the Chase Debit Card 3% Cash Back advertisement; the Visa Debit-Check Card FAQ page; and the Chase Debit Card Processing information page. *See Debit Card Processing*, J.P. Morgan Chase Bank, N.A., http://www.chasepaymentech.com/debit_card_processing.html (last visited Apr. 16, 2012); *Debit Card 3% Cash Back*, J.P. Morgan Chase Bank, N.A., https://www.chase.com/index.jsp?pg_name=ccpmapp/shared/marketing/page/cdc_0930_ext (last visited Apr. 16, 2012); *Visa Debit-Check Card FAQ*, Visa, Inc., http://usa.visa.com/personal/cards/debit/visa_check_cards_faq.html#anchor_13 (last visited Apr. 16, 2012). If the parties believe that the information contained in these sources is inaccurate, the Court will entertain a motion for reconsideration, but only if such motion provides **authoritative** proof that Plaintiff's purchase was "on credit."

[3] Plaintiff made her purchase from Defendant's store with a Chase Visa card. (Rothman Decl. ¶¶ 2-3; Germaise Decl. Ex. A.)

Case 2:11-cv-03617-SJO-RZ   Document 93   Filed 04/26/12   Page 5 of 8   Page ID #:1486

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 11-03617 SJO (RZx)**              **DATE:   April 26, 2012**

'CREDIT' to get the 3% Cash Back.  But don't worry, you're not putting the purchase on credit. The money still comes out of your checking account.").  When a customer selects "credit" during a purchase, the "[d]ebit card still works like a debit card, not a credit card: The purchase amount is deducted from [her] checking account" and she does not pay interest.  *Visa Debit-Check Card FAQ*, Visa, Inc., http://usa.visa.com/personal/cards/debit/visa_check_cards_faq.html#anchor_13 (last visited Apr. 16, 2012).

Selecting "credit" offers additional security protections, but the debit card functions as a debit card nonetheless.  *Id.*  Whether a customer chooses PIN debit (i.e., selects "debit") or signature debit (i.e., selects "credit"), the purchase is not made "on credit"; instead, the purchase amount is deducted directly from the customer's bank account.  *Id.*; *Debit Card 3% Cash Back*, *supra*. Plaintiff focuses on the fact that the "transaction is processed over the VISA credit card network." (Reply 2.)  It is true that when a customer selects "credit," the transaction is routed through the financial corporation's network.  *Visa Debit-Check Card FAQ, supra*.  However, this is to provide the customer with security protections, not to transform the debit card purchase into a credit card purchase.  *Id.* ("When you press Credit and sign for a purchase, your transaction is routed through the Visa network.  This gives you all the security protections of a Visa transaction.  But your Visa Debit card still works like a debit card, not a credit card.").  The fact that the purchase amount was deducted from Plaintiff's checking account - instead of being placed on her credit card balance - demonstrates that Plaintiff's purchase was not made on credit.  (*See* Reply 2-3; Germaise Decl. Ex. A.)

Plaintiff's statements show that she selected the signature debit process during the May 2010 Purchase.  Plaintiff states that when she uses her card as a "credit card" she "would personally swipe [her] card, select 'Credit' on the terminal and sign the screen if required."  (Rothman Decl. ¶ 7.)  Plaintiff also claims that when she selects "credit," the transaction is "processed over the VISA credit card network." (Rothman Decl. ¶ 7.)  Plaintiff has merely described the signature debit process.  *See Debit Card Processing, supra*.  Plaintiff's declaration illustrates that she did not use a credit card during the May 2010 Purchase.  (*See generally* Rothman Decl.)  Although Plaintiff claims she selected "credit" at the point of sale, this does not mean she made her purchase on credit - only that she selected the signature debit process.  *See Debit Card 3% Cash Back*, *supra*.

Plaintiff makes much of the fact that the purchase amount was deducted from her account a few days after her May 2010 Purchase. (Reply 2-3.)  As an initial matter, the TAC alleges that Plaintiff made her purchase on May 17, 2010 (TAC ¶ 28), and her bank records show that her account was debited May 17, 2010.  (Germaise Decl. Ex. A.)   Plaintiff now appears to be altering her allegation, claiming - directly in contradiction to the allegation in the TAC - that the purchase was made on May 13, 2010, but that her account was not debited until May 17, 2010. (Reply 3.)  Even if there were a lag time between when the purchase was made and when the checking account was debited, the determinative factor is not when the money was deducted from the account, but

Case 2:11-cv-03617-SJO-RZ Document 93 Filed 04/26/12 Page 6 of 8 Page ID #:1487

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-03617 SJO (RZx)</u>    DATE: <u>April 26, 2012</u>

whether the purchase was made "on credit"; and selecting "credit" does not mean "putting the purchase on credit." *See Debit Card 3% Cash Back, supra*.[4]

Under the Act's definition, a "credit card" means any credit device that is specifically used to make a purchase "on credit." *See* Cal. Civ. Code § 1747.02(a). Section 1747.08(a) only references purchases made with a credit card. *Id.* § 1747.08(a); *Saulic*, 596 F. Supp. 2d at 1328. Plaintiff did not make her purchase "on credit," and therefore, the card she used was not a credit card. Plaintiff did not suffer a violation of an interest that is protected by the statutory provision invoked in the suit. Consequently, she does not have standing to bring her section 1747.08 claim.

      C.    <u>Legal Standard for Class Certification</u>

Federal Rule of Civil Procedure 23(a) provides that a class action is only appropriate if four prerequisites are met:

    (1)    the class is so numerous that joinder of all members is impracticable;
    (2)    there are questions of law or fact common to the class;
    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Even if all these prerequisites - numerosity, commonality, typicality, and adequacy of representation - are satisfied, the court must still determine whether the class action is maintainable under Rule 23(b). "The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of

---

[4] Plaintiff also appears to be alleging that the purchase she made at Defendant's store was financed through a "shadow line of credit." (Reply 2.) As the Court has already made clear, Plaintiff is not an expert on financial institutions and how funds are credited and debited. Plaintiff's explanations for how lines of credit are given for purchases with bank cards are afforded no weight. However, Plaintiff cites *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1101 (N.D. Cal. 2010) to help explain shadow lines of credit. Assuming the information in *Gutierrez* accurately describes the process, a shadow line of credit is where a bank permits its customers to use their debit cards to overdraft their bank account. Perhaps if the purchase Plaintiff had made from Defendant's store incurred an overdraft on her account, this case would present an interesting and novel issue of whether a debit card purchase that forces an overdraft (which the banking institution permits on a shadow line of credit) counts as a purchase "on credit" for the purposes of the Act. There is no evidence before the Court, however, to suggest that Plaintiff's account was overdrawn when she made the purchase that is at the heart of the allegations in the TAC. The "shadow line of credit" argument is therefore inapplicable.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-03617 SJO (RZx)</u>     **DATE:** <u>April 26, 2012</u>

Rule 23(b) are met." *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). Plaintiff argues that the proposed class satisfies Rule 23(b)(3). (Mot. 17-20.) A class action can be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule - that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S. Ct. 2541, 2551 (2011). "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). The trial court is expected to engage in a "rigorous analysis" to determine if the prerequisites of Rule 23(a) have been satisfied. *Dukes*, 131 S. Ct. at 2551. "Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. . . . [C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 2551-52 (internal quotation marks omitted).

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The inquiries into the commonality and typicality prerequisites tend to merge. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551 n.5 (internal quotation marks omitted). This Court has held:

> [T]he purpose of the typicality requirement is to assure that the interest of the named representatives aligns with the interests of the class. Typicality tests whether the other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*Colapinto v. Esquire Deposition Servs., LLC*, No. 09-CIV-07584, 2011 WL 913251, at *6 (C.D. Cal. Mar. 8, 2011).

Plaintiff argues that her claims are typical of the putative class members because "Defendant requested and recorded PII in conjunction with the credit card transactions of putative class members in California from March 16, 2010, through at least February 18, 2011." (Mot. 15-16.) Defendant contends that Plaintiff's claim is not typical because "[t]he class claim rests on allegations of a request for a zip code in connection with a credit card transaction," and "Plaintiff's transaction involved a debit [card] - not credit." (Opp'n 15.) Defendant also claims that "Plaintiff's claim and the putative class members' claims *are not subject to common proof*." (Opp'n 15.)

Case 2:11-cv-03617-SJO-RZ Document 93 Filed 04/26/12 Page 8 of 8 Page ID #:1489

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 11-03617 SJO (RZx)        DATE: April 26, 2012

Plaintiff is not a typical member of the class - indeed, she is not a member of the class she seeks to represent at all. The putative class members engaged in **credit card** transactions when Defendant allegedly requested and recorded their PII. (Mot. 15-16.) Plaintiff used a **debit card** to fund her transaction at Defendant's store. Plaintiff may have selected the "credit" option during the transaction, but that did not transform her debit card into a credit card. *See Visa Debit-Check Card FAQ, supra*. Plaintiff cannot establish that she used a credit card during the May 2010 Purchase. Therefore, the typicality prong of Rule 23(a) is missing. Because Plaintiff must satisfy all the prerequisites in Rule 23(a), her failure to meet the typicality requirement is fatal to class certification. *See* Fed. R. Civ. P. 23(a); *Xavier*, 787 F. Supp. 2d at 1089.

       D.     Leave to Amend

Plaintiff's TAC cannot be saved by amendment because the evidence before the Court proves that she did not use a credit card during the May 2010 Purchase. *See* Cal. Civ. Code § 1747.08(a). Consequently, Plaintiff does not have standing, and granting leave to amend would be futile. The Court, therefore, dismisses Plaintiff's TAC without leave to amend. *See Desaigoudar v. Meyercord*, 223 F.3d 1020, 1026 (9th Cir. 2000); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (internal quotation marks omitted)).

III.     RULING

For the foregoing reasons, the Court **DENIES** Plaintiff's Renewed Motion for Class Certification and **DISMISSES** the Third Amended Complaint without leave to amend.

If Plaintiff believes she can present **authoritative proof** that the bank card processes described in this Order are incorrect and that her purchase from Defendant's store was "on credit," she may file a motion for reconsideration on or before May 14, 2012.

IT IS SO ORDERED.